1  STEVEN G. KALAR
   Federal Public Defender
2  GRAHAM ARCHER
   Assistant Federal Public Defender
3  55 S. Market Street, Suite 820
   San Jose, CA  95113
4  Telephone: (408) 291-7753
   Graham_Archer@fd.org
5
   Counsel for Defendant, DOUGLAS STORMS YORK

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA, | ) No. CR 15-00226 BLF |
|---|---|
| Plaintiff, | ) DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* NO. 2 |
| vs. | ) |
| | ) Pretrial Conference: July 16, 2015 |
| | ) Time: 2:00 p.m. |
| DOUGLAS STORMS YORK, | ) |
| | ) Trial Date: July 20, 2015 |
| Defendant. | ) |
| | ) **Honorable Beth Labson Freeman** |

Defendant Douglas Storms York submits the following opposition to the government's Motion *in Limine* no. 2 to preclude improper evidence and argument.

**ARGUMENT**

**I.    The Court Should Deny the Government's Motion Regarding Improper Argument**

To the extent that the government has concerns regarding the defense's potential to raise certain issues at trial, the defense respectfully submits that the government's concerns can be addressed upon timely objections to any allegedly improper statements, argument, questions and/or

conduct, by appropriate admonitions or other sanction deemed appropriate by the Court on the actual occasion. The Court should deny this motion as premature.

### A. Jury Nullification

The government's concern about possible defense arguments suggesting jury nullification is unfounded. See Govt. Mot. *In Limine* No. 2 ("GMIL 2") at 1-2. The defense has no intention of arguing for jury nullification. As the Ninth Circuit has observed, a jury "is entrusted with the obligation to apply the law, and we in turn presume that juries follow instructions given to them throughout the course of the trial." United States v. Padilla, 639 F.3d 892, 897 (9th Cir. 2011). There is no reason to think that the defense's arguments would prevent the jury from fulfilling its obligation to apply the law in this case. Additionally, the government's concerns cannot override Mr. York's constitutional right to present a defense. Chambers v. Mississippi, 410 U.S. 284 (1973).

### B. The Court Should Permit Evidence of the Victims' Bad Acts and Character for Untruthfulness

The government has yet to disclose to the defense any prior bad acts or prior instances of untruthfulness for the alleged victim witnesses -- Andrea York or Allan Hessenflow. The defense reminds the government of its constitutional obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972).[1]

It appears that the government's argument is that the defense cannot introduce evidence of bias of any government witnesses. GMIL 2 at 2-3. There is no case law supporting such a radical interpretation of the Federal Rules of Evidence. Regarding pertinent character traits of the victim, Federal Rule of Evidence 404(a) provides an exception to the general prohibition on character trait evidence: "[S]ubject to the limitations in Rule 412, a defendant may offer evidence of an alleged victim's pertinent trait." See Fed. Rule Evid. 404(a)(2)(B). If this evidence is admitted the government may rebut the evidence or offer evidence of the defendant's same trait. Id.

---

[1] On May 14, 2015, the defense sent an initial discovery letter to the government requesting any Brady/Giglio materials.

Def.'s Opp. to Govt. Mot. *In Limine* No. 2
CR 15-00226 BLF                          2

1   Therefore, the Court should allow the defense to introduce evidence of pertinent character traits for
2   both of the alleged victims in this case.

3   Additionally, Federal Rule of Evidence 608(b) places no limitation on the defense's
4   examination of a witness as to specific instances of conduct concerning the witness' character for
5   truthfulness or lack of truthfulness, other than the discretion of the court.  To the extent that the
6   government seeks a pretrial exercise of that discretion under Rule 403, it should be compelled to
7   articulate why it believes that the allegations of misconduct or dishonesty regarding its witnesses
8   are not credible or probative, and why its witnesses responses to those allegations would not
9   adequately inform the jurors.  "The burden under Rule 403 is on the party opposing admission, who
10  must show that the probative value 'is *substantially outweighed* by the danger of unfair prejudice.'"
11  United States v. Tse, 374 F.3d 148, 164 (1st Cir. 2004) (quoting Fed. R. Evid. 403) (emphasis in
12  original).

13  Finally, while Rule 608 does prohibit the use of extrinsic evidence to prove such specific
14  acts, upon a denial of by the same witness, the rule nonetheless permits the impeachment of a
15  witness through "testimony about the witnesses's reputation for truthfulness or untruthfulness, or
16  by testimony in the form of an opinion about that character." Fed. R. Evid. 608(a).

17  Accordingly, the Court should allow evidence of the victims' bad acts and character for
18  untruthfulness.

19  **C.    The Court Should Deny the Unilateral, Overly Broad Proscription On All Reference to Potential Consequences that Mr. York May Face**
20

21  The government has moved to preclude any reference by the defense to Mr. York's potential
22  sentence during all phases of the trial.  GMIL 2 at 3.  While seemingly innocuous, the government's
23  motion goes much farther than the law permits.  The government seeks to preclude the defense from
24  referencing Mr. York's liberty and that the jury's decision will have "consequences." Id. The
25  government has no authority for this proposition.

26  Several cases cited by the government do not actually address the issue now before the

1  Court.  In Rogers, the issue was whether the district court properly responded to a note from the jury
2  asking whether it could return a verdict of guilty with a recommendation for extreme mercy.  See
3  Rogers v. United States, 422 U.S. 35, 39 (1975) (holding that Rule 43 error was not harmless where
4  district court responded to jury's note outside the defendant's presence and without affording him
5  an opportunity to respond).  In Frank, the issue was whether the district court must instruct the jury
6  on the consequences of a not-guilty-by-reason-of-insanity verdict.  United States v. Frank, 956 F.2d
7  872, 882 (9th Cir. 1992).  Finally, in Reed, the issue was whether the instruction not to consider
8  punishment conflicted with the instruction to view with caution the testimony of a government
9  witness who had entered a plea bargain.  United States v. Reed, 726 F.2d 570, 579 (9th Cir. 1984).
10 Therefore, assuming these cases have some bearing on the issue before the Court in this case, the
11 passages cited by the government are dicta.

12      At a minimum, Mr. York must be permitted to exercise his constitutional right to present a
13 defense, which includes distinguishing between the standards for a criminal case and a civil case.
14 Chambers v. Mississippi, 410 U.S. 284 (1973).  That requires a discussion of the differing burdens
15 of proof and presumptions of innocence.  It also requires a reasonable explanation of the rationale
16 for that distinction - namely, the significant liberty interest at stake in any criminal proceeding - to
17 prevent the jury from the temptation to regard the distinction as an arbitrary and potentially
18 amorphous or elastic one.

19      Moreover, the government's ban on defense references to anything to have to do with
20 punishment sweeps too broadly.  The government's proposed request would, for example, preclude
21 the defense from arguing that the jury should take its decision seriously because it will have serious
22 consequences for Mr. York.  This prohibition would leave no room to respond to an improper
23 argument by the government about Mr. York's dangerousness or seriousness of the charged offense.
24 See United States v. Hinton, 31 F.3d 817, 825  (9th Cir. 1994) (rejecting challenge, on plain-error
25 review, to government argument about seriousness of charged offense and defendant's future
26 dangerousness).

If the court is inclined to preclude references to punishment at trial, its bar should encompass the government as well as the defense. See Evalt v. United Sates, 359 F.2d 534, 546 (9th Cir. 1966) (reversing conviction where government but not defendant was allowed to argue effect of not-guilty-by-reason-of-insanity verdict). "The court should [impose] upon the prosecutor the same restriction as to the effect of a verdict of not guilty as it impose[s] upon the defense." Id. The government should not be permitted to argue or imply that Mr. York is a danger to society, for example, or that the jury needs to ensure that he is punished for breaking the law. See Evalt, 359 F.2d at 546 (government may not invite jury to convict defendant, for society's protection, even though it might have believed defendant not guilty by reason of insanity). If the government does in fact raise the issue at trial, Mr. York is entitled to respond and/or have the jury instructed to minimize any misrepresentations. Shannon v. United States, 512 U.S. 573, 587-88 (1994).

Dated: July 9, 2015

Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender

　　　　/s/
GRAHAM ARCHER
Assistant Federal Public Defender