STEVEN G. KALAR
Federal Public Defender
GRAHAM E. ARCHER
Assistant Federal Public Defender
55 South Market Street, Suite 820
San Jose, CA 95113
Telephone: (408) 291-7753

Counsel for Defendant YORK

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR-15-00226 EJD |
| Plaintiff, | DEFENDANT'S SENTENCING MEMORANDUM |
| vs. | Date: January 4, 2016 |
| DOUGLAS STORMS YORK, | Time: 1:30 p.m. |
| Defendant. | Judge: Hon. Edward J. Davila |

## INTRODUCTION

Mr. York appears before this Court for sentencing after trial on a single count of False Personation of an Employee of the United States (18 U.S.C. § 912) for a prank phone call made on February 24, 2012. This phone call was made to his wife's new boyfriend during a contentious divorce and child custody dispute, at the apex of a personal and professional meltdown that would eventually lead Mr. York to spend time in state prison. The phone call was in poor taste and reflected a lack of judgment, but it sought no fraudulent gain, serving only to annoy Mr. Hessenflow, who jumped at the opportunity to report his girlfriend's antagonistic husband to federal authorities.

While Mr. York's criminal history is significant (though most of the convictions minor), the fact remains that this prosecution is for a single voicemail that was immediately recognized by the recipient as a fake and a prank. For that, Mr. York should not be sentenced to any more custody time than the significant amount he has already served.

**BACKGROUND**

There is little dispute as to the facts of the case, and the Court is well familiar with them having presided over the trial.

The voicemail was left on February 24, 2012, Mr. Hessenflow reported the call to the IRS on February 25, 2012, and the case was referred to the US Attorney's office for prosecution on December 4, 2012. For some reason, the Government waited two and a half years before seeking an indictment, doing so on April 22, 2015. In the interim, Mr. York was sentenced to state prison for contemporaneous conduct and released. Mr. York was brought into federal custody on May 12, 2015, and remained in custody until his release on bond June 19, 2015. Seven days before the pretrial conference, the Government superseded to add a count of Telecommunications Device Harassment (47 U.S.C. § 223(a)(1)(C), which was dismissed mid-trial.

At trial the Government introduced no evidence that Mr. York intended to defraud Mr. Hessenflow, and instead argued that Mr. York was guilty because he had impersonated an IRS agent, and acted as one by leaving the prank voicemail. Mr. York was convicted of the one remaining count.

During his time in prison and the time since his release, Mr. York has not attempted contact with his wife or Mr. Hessenflow. To the contrary, while he is hopeful that he will be able to re-establish a relationship with his children in the future, he has been respectful of the court orders in place.

**ARGUMENT**

**I.    The § 3553(a) Factors Call for a Below Guideline Sentence**

The Supreme Court and the Ninth Circuit have made it clear that the Guidelines are neither mandatory nor presumptively reasonable. *See, e.g., United States v. Booker*, 543 U.S. 220 (2005); *Nelson v. United States*, 555 U.S. 350 (2009); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc).  To arrive at an appropriate sentence, a court must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need to avoid unwarranted disparities, and the need for just punishment and deterrence.  18 U.S.C. § 3553(a). Here, because the offense conduct is exceedingly mitigating when compared to the range of conduct proscribed under the statute, the staleness of the offense conduct, and the Mr. York's life circumstances at the time of the offense, a sentence below the guideline range is appropriate.

**A.    The Nature and Circumstances of the Offense**

The charged offense conduct involves a single voicemail in a ridiculous altered voice left for the new boyfriend of Mr. York's wife during a custody dispute. The recipient immediately recognized it as fake, and the phone number left with the voicemail was non-functional. The conduct is, at best, at the outer edge of what is criminalized by the statute.

On its face, Section 912 criminalizes the impersonation of federal employees, an important goal. For example, leveraging a false FBI credential to coerce someone into doing something, or an Air Marshal credential to bypass airport security are examples of conduct that causes real harm, and should be punished severely under this statute. Additionally, phone calls by impostors claiming to be IRS agents and demanding money for fictional unpaid taxes should be punished under this statute. Those actions not only serve to further a fraudulent goal, but undermine faith in government.

1   The United States Supreme Court in *United States v. Lepowitch* 63 S. Ct. 914 (1943)
2   noted that the purpose of Section 912 was, in part, "to maintain the general good repute and
3   dignity of the (government) service itself. Id. at 916 (internal quotations omitted).

4   Here, there is no evidence that Mr. York was trying to defraud Mr. Hessenflow out of
5   anything, and all evidence points to Mr. York simply attempting to annoy him. Had Mr. York
6   actually been seeking to begin a dialogue under a ridiculous assumed voice and identity in order
7   to gain something, he would have left a real number for Mr. Hessenflow to call, or would have
8   called back the next day. None of that occurred. The caller ID was a fake, and there was no
9   follow-up to the single voicemail left.

10  The punishment meted out should reflect the degree to which the conduct caused the type
11  of harm proscribed by the statute. There was no fraud – no money was sought, and there was no
12  actual attempt to get Mr. Hessenflow to turn over personal documents. All that is left is potential
13  harm done by undermining the trust in government operations.

14  Here, there was no harm to that trust or reputation. No official seal was forged, no fake
15  badge was displayed. Instead, Mr. Hessenflow received a voicemail in an obviously altered
16  voice, the content and professionalism of which wouldn't pass muster at a fast food drive-
17  through window, let alone the IRS. Mr. Hessenflow immediately suspected Mr. York.

18  Mr. York proceeded to trial on this case because Mr. Hessenflow was the recipient of a
19  poorly conceived prank, not a genuine attempt to impersonate an IRS employee, and the sentence
20  imposed should reflect as such.

21  **E.     Personal Characteristics of Mr. York**

22  Mr. York has supported himself since he left home during high school. He and his wife,
23  Andrea York, ran a successful construction business building outdoor BBQ islands until the real
24  estate collapse in 2008. That collapse and the subsequent financial ruin caused great friction
25  between Mr. York and his wife.

26  That friction, professional failure, and his sudden inability to provide for his children

contributed to Mr. York's substance abuse and personal crisis from 2009 to 2012. Ms. York traveled down the same unfortunate path, losing custody of her children due to substance abuse and domestic violence committed against Mr. York. Mr. York held sole custody of their children from 2008 through 2012. As is apparent from the summaries of the police reports during that time, Mr. York was troubled and struggling with methamphetamine addiction. His flight from the area while on probation eventually led to a prison sentence.

Mr. York is now in the process of putting his life back together. While he was successful in his entrepreneurship earlier in life, he is now seeking a union carpentry position. Mr. York is hopeful that the steady work will keep his life stable.

Mr. York has the support of his family. His mother and son attended his trial, and have often been present with him at other court appearances. As noted by his mother in the presentence report "the best thing for the defendant is for him to work and stay busy."

While a court order currently prevents him from contacting Ms. York or his daughters, he is hopeful that he will be able to contribute to their lives in the future. Mr. York wishes Ms. York and Mr. Hessenflow no ill will, and is interested in putting 2012 and the few years prior far in the rearview mirror.

Mr. York relapsed under the stress of the pending case, but has been attending NA meetings for the portions of the case he has been out of custody. When Mr. York was in custody, he was awarded the position of "trustee" at the jail, and worked in the administrative office six to eight hours a day. He is committed to rebuilding his life and staying sober.

### F.   Deterrence and Re-Offense

The circumstances under which the offense conduct occurred no longer exist. The highly contentious child custody dispute is no longer in dispute. Mr. York has not attempted contact with Mr. Hessenflow or Ms. York for over three years. As discussed above, the offense conduct here falls barely within the harm proscribed by statute, with no fraud occurring, and no danger that the recipient lose faith in the sanctity of government authority. The sentence should reflect as

1  such.

2  The timing of the Government's filing should be factored into this Court's decision, as
3  well. Through their unexplained delay, the Government cost Mr. York the possibility of a
4  concurrent sentence, but also gave him a three year opportunity to demonstrate to this Court that
5  he is no threat to Ms. York or Mr. Hessenflow.

6  As the Court noted during pretrial argument, this was not a trial held for the purpose of
7  rehashing bad behavior by both sides during a family court proceeding. The sentencing,
8  especially three years later, should not be a venue for that either.

9  During the duration of this case, over 8 months as of this filing, Mr. York has either been
10 in custody, in a halfway house, or on extremely strict home detention. He has been permitted to
11 leave only for NA meetings, court appearances, and to seek employment or medical treatment.
12 Mr. York has been punished enough for a single voicemail he left in 2012.

## CONCLUSION

14 For the foregoing reasons, Mr. Young asks that the Court impose a sentence of credit for
15 time served, a supervised release term of 1 year, and no fine. If the Court imposes an additional
16 custodial sentence, Mr. York asks that he be placed as close as possible to San Jose to permit his
17 son and mother to visit.

19 Dated: December 28, 2015

22 Respectfully submitted,

23 STEVEN G. KALAR
   Federal Public Defender

25 _____/s/_____
   GRAHAM ARCHER
26 Assistant Federal Public Defender